

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 16, 2022

**Via ECF**

The Honorable Jesse M. Furman
United States District Judge for the
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. United States* v. *Shannon Carter*, 21 Cr. 538 (JMF)

Dear Judge Furman:

      The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for November 22, 2022, at 10:00 a.m., on the defendant's conviction of being a felon in possession of ammunition, in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.

      As detailed below, the defendant's conduct was shockingly dangerous and cruelly executed. It is ill-described by the title of the code violation he committed. One evening in the Bronx in July 2021, after confronting and arguing with a former romantic partner ("Victim-1"), the defendant deliberately obtained a firearm from a confederate, pointed the gun in the direction of Victim-1's apartment from across a city street, and fired the gun multiple times. After the shooting, the defendant made sure Victim-1 knew his intent was to terrify her and her family, texting: "My next one is coming to the door. Everyone sits down."

      The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") call for a sentence within the range of 84 to 105 months' imprisonment. For the reasons that follow, the Government respectfully submits that the defendant's conduct, particularly viewed against his criminal history—which includes prior convictions for violent offenses—warrants the imposition of a sentence within the Guidelines range, which would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing in this case.

**I.**      **Offense Conduct**

      The afternoon of July 10, 2021, Carter and Victim-1, who is Carter's former intimate partner, engaged in a verbal dispute in the vicinity of Clay Avenue and East 169th Street in the Bronx, New York. During the argument, Carter demanded money from Victim-1, and Victim-1 threatened to call the police if Carter would not leave her alone. Before returning to her apartment, Victim-1 observed another man arrive and appear to pass an object to Carter.

Hours later, that evening, Victim-1 saw Carter from her apartment window and heard Carter yelling at her from across the street on Clay Avenue. Victim-1 was home with four children and three other adults at the time. As Victim-1 watched from her window, she realized Carter had a gun in his hand, ducked out of view from the window, and then heard gunfire. No bullets appeared to hit the apartment or windows. After hearing the shots, Victim-1 looked again through the window, where she could see Carter appear to pass an object to another man, who walked away. Victim-1 then heard Carter shouting, "come outside," before leaving the scene. Minutes after the incident, Victim-1 received a text message from Carter texted, which read, in substance and in part, "It's over here / My next one is coming to the door / Everyone sits down."

The police were notified of the incident via the e911 system, both by a Shotspotter Activation and 911 calls.[1] Responding officers did not locate Carter, but did find two shell casings on the sidewalk across from Victim-1's apartment. Victim-1 was interviewed and confirmed that Carter had fired a gun across the street from her apartment.

Surveillance video consistent with Victim-1's description of events was recovered, and included footage appearing to depict Carter and the discharge of a firearm in the direction of the apartment buildings across the street from Carter's position on Clay Avenue, including the still image depicted below, in which image Carter's muzzle flash is visible in the image's upper right quarter:



---

[1] Shotspotter is a system used by the NYPD to automatically detect the sound of gunfire and triangulate its location to provide real time notification to police through the 911 system. *See, e.g.*, NYPD: Shotspotter Use and Impact Policy, https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/post-final/shotspotter-nypd-impact-and-use-policy_4.9.21_final.pdf (retrieved November 16, 2022).

On or about July 13, 2021, the NYPD arrested Carter. Carter was issued Miranda warnings and agreed to answer questions during a videotaped interview. During the interview, Carter acknowledged that he had been involved in an incident with Victim-1, viewed and positively identified himself in the above still images taken from surveillance, and admitted he fired a gun on July 10, 2021.

During the interview, Carter claimed to have felt that Victim-1's new boyfriend was disrespectful during an interaction earlier that day, and that Carter had then called a friend—whose identity he refused to disclose—to bring him a firearm, which he later fired "to blow off steam." Carter, however, claimed to have fired only "one time, it was bullshit." The evidence, however, included two recovered shell casings fired from the same gun, as well as the Shotspotter recordings which appear to have captured the audio profile of at least two, and possibly three, gunshots. Carter acknowledged during the interview that he had previously been incarcerated.

A review of Carter's criminal history demonstrates Carter has sustained four prior felony convictions, including arson, assault, and possession of a controlled substance with the intent to sell. Carter served at least two year prison sentences in all but one of those felony cases.

A Special Agent with the ATF reviewed photographs of the headstamps of the recovered shell casings and determined that they had been manufactured by Grandeur Fasteners Inc., which is located in the State of Arkansas.

## II. Procedural History

### A. The Defendant's State and Federal Proceedings

As noted above, the defendant was arrested on July 13, 2021, and charged by the Office of the Bronx County District Attorney with offenses including weapons possession and felony reckless endangerment. The case was presented to a state Grand Jury, and on July 19, 2021, the defendant was indicted on charges including violations of New York Penal Law ("NYPL") §§ 110/120.10(1), Attempted Assault in the First Degree; 110/120.05(1) and (2), Attempted Assault in the Second Degree; 120.25, Reckless Endangerment in the First Degree; and 265.03(3), Criminal Possession of a Weapon in the Second Degree.[2] The Bronx Grand Jury also returned lesser included offenses, including a charge related to the defendant's weapons possession as a prior felon. The defendant met certain bail conditions and was released from state custody pending trial.

Shortly after the commencement of proceedings in Bronx County, on August 25, 2021, the defendant was separately charged in Indictment 21 Cr. 538 (JMF) (the "Indictment") in the Southern District of New York. The Indictment charged the defendant with one count of being a felon in possession of ammunition, in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2. The defendant was arrested on December 15, 2021, and ordered detained. The Government understands the state charges were dismissed in favor of federal prosecution.

---

[2] The Grand Jury was also asked to consider NYPL § 110/125.25(1), Attempted Murder in the Second Degree, and voted no true bill as to that count only.

### B. The Plea Agreement

On April 14, 2022, the defendant pled guilty to the charge contained in the Indictment pursuant to a plea agreement (the "Plea Agreement").  In the Plea Agreement, the defendant stipulated that:

a. Pursuant to U.S.S.G. § 2K2.1(a)(2), the base offense level is 24 because the defendant committed the instant offense subsequent to sustaining two felony convictions of either a crime of violence or a controlled substance offense.

b. Pursuant to U.S.S.G. § 2K2.1(b)(6)(B), four levels are added because the defendant committed the instant offense with knowledge, intent, or reason to believe that the ammunition would be used or possessed in connection with another felony offense.

The parties also stipulated that, based on the defendant's timely acceptance of responsibility, an additional three-level decrease is warranted.  The defendant's offense level under the Plea Agreement is thus 25.  Given the defendant's nine prior convictions, including two felony and one misdemeanor convictions between May 15, 2006, September 15, 2011, and January 12, 2018, the defendant has a criminal history score of eight, resulting in a Criminal History Category IV.  Accordingly, the Plea Agreement included a Guidelines range of 84 to 105 months' imprisonment (the "Stipulated Guidelines Range").

Consistent with the Plea Agreement, the Probation Office calculates a total offense level of 25, Criminal History Category of IV, and Guidelines range of 84 to 105 months' imprisonment. PSR ¶¶ 16-38, pg. 21.

### C. The Defendant's Sentencing Submission and Guidelines Discussion

On November 9, 2022, counsel for the defendant filed a sentencing submission ("Deft. Sent. Sub.") which included a Guidelines calculation different from that in the plea agreement and the PSR.  In particular, the defendant's submission argued that the defendant's base offense level under U.S.S.G. § 2K2.1(a)(2) is unsupportable because the defendant does not have two felony convictions of either a crime of violence or a controlled substance offense.  (*Id.* at 2).  The defendant agreed that the defendant's 2006 conviction for Assault in the Second Degree is a "prior violent felony," but suggested that the defendant's 2011 conviction for Attempted Arson in the Third Degree "is not a violent felony in New York." (*Id*.)  The Government understands the defendant's submission to mean that the defendant only has one prior conviction for a crime of violence within the meaning of U.S.S.G. § 4B1.2, and therefore that his base offense level should be 20 pursuant to U.S.S.G. § 2K2.1(a)(4).[3]  Under this amended calculation, the defendant

---

[3] The Defendant's Submission argued at length that neither of the defendant's prior felony drug offenses should be counted under § 2K2.1(a)(2).  The Government and Probation agree.  Neither the Plea Agreement nor the Final PSR suggest that either of those offenses contributed points to the defendant's Criminal History Category calculation, and pursuant to § 2K2.1, Cmt. App. Note 10, § 2K2.1(a)(2) is implicated only by "those felony convictions that receive criminal history

submitted that his Guidelines range should be 57-71 months' imprisonment.  (*Id.* at 5).

Since the filing of the defendant's submission, the parties have conferred, and the Government now understands that defense counsel will withdraw his objection to the applicability of U.S.S.G. § 2K2.1(a)(2) in this case, as the parties agree that Attempted Arson in the Third Degree, in violation of NYPL § 110/150.10 is a "crime of violence" within the meaning of U.S.S.G. §§ 4B1.2(a)(2) and 4B1.2 Cmt. App. Note 1.[4]  *See, e.g., United States v. Hathaway*, 949 F.2d 609, 610 (2d Cir. 1991) (outlining modern generic definition of arson); *McNaught v. United States*, 646 F. Supp. 2d 372, 379 (S.D.N.Y. 2009) ("[the New Jersey] statute, which incorporates purposeful conduct in starting a fire and reckless conduct in endangering a person or a structure, fits comfortably within the generic range of arson statutes. [...] *See, e.g.*, N.Y. Penal Law § 150.05 (defining arson to include "recklessly damag[ing] a building ... by intentionally start[ing] a fire")."; *United States v. Saunders*, 436 F.Supp.3d 595 (E.D.N.Y. 2020) (disagreeing with *McNaught* only to extent of excluding reckless conduct from generic definition of arson); *see also Santana v. Holder*, 714 F.3d 140, 141 (2d Cir. 2013) (discussion of New York arson statute in context of 18 U.S.C. § 16):

> The United States Sentencing Guidelines enumerates arson as a "crime of violence" warranting enhanced penalties. *See* U.S. Sentencing Guidelines Manual §§ 2L1.2(b)(1) cmt. n. 1(B)(iii), 4B1.2(a)(2) (2012). Fire is a powerful weapon—easy to wield, capable of overwhelming destruction, and difficult if not impossible to control. *It would defy common sense to characterize arson as anything but a violent crime.*

*Id.*, at 145 (emphasis added).[5]  Based on the foregoing, the parties are in accord with the Plea Agreement and Probation, and calculate a Guidelines range of 84 to 105 months' imprisonment.

---

points under § 4A1.1(a), (b), or (c)."  Thus it is undisputed that the defendant's felony drug convictions have no bearing on the applicability of § 2K2.1(a)(2) in this case.

[4] NYPL § 150.10, arson in the third degree, provides:

> 1. A person is guilty of arson in the third degree when he intentionally damages a building or motor vehicle by starting a fire or causing an explosion.
>
> 2. In any prosecution under this section, it is an affirmative defense that (a) no person other than the defendant had a possessory or proprietary interest in the building or motor vehicle, or if other persons had such interests, all of them consented to the defendant`s conduct, and (b) the defendant`s sole intent was to destroy or damage the building or motor vehicle for a lawful and proper purpose, and (c) the defendant had no reasonable ground to believe that his conduct might endanger the life or safety of another person or damage another building or motor vehicle.

[5] Like the court in *Hathaway*, other courts "have all concluded that the modern generic definition of arson is the intentional (or willful) and/or malicious burning of property." *United States v.*

### III.   Discussion

#### A.   Applicable Law

As the court is aware, the Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18.   U.S.C. § 3553(a)(2).

#### B.   The Defendant's Conduct and History Warrant a Guidelines Sentence

The Government respectfully submits that a sentence between 84 and 105 months' imprisonment—within the applicable Guidelines range—would be sufficient, but not greater than

---

*Delgado–Montoya*, 663 F. App'x 719, 724 (10th Cir. 2016) (unpublished) (citing *United States v. Gatson*, 776 F.3d 405, 410 (6th Cir. 2015)); *United States v. Misleveck*, 735 F.3d 983, 988 (7th Cir. 2013); *United States v. Whaley*, 552 F.3d 904, 907 (8th Cir. 2009); *United States v. Velez–Alderete*, 569 F.3d at 546 (5th Cir. 2005) (per curiam)). *See also United States v. Lee*, 608 F. App'x 375, 377 (6th Cir. 2015) (unpublished) ("The widely accepted 'generic' definition of arson thus includes the knowing burning of personal property without consent or with unlawful intent.") (quoting *United States v. Miller*, 246 F. App'x 369, 372 (6th Cir. 2007) (unpublished)).

necessary, to comply with the purposes of sentencing. Weighing the applicable factors under 18 U.S.C. § 3553(a)(2), it is clear that the seriousness of the offense, and the need to promote respect for the law, provide just punishment, afford adequate deterrence and protect the public, are all significant considerations in crafting a just sentence given the conduct at issue in this case.

In the main, the nature and circumstances of the defendant's offense merit a serious sentence. *See* 18 U.S.C. § 3553(a)(1). The defendant possessed ammunition as a prior felon, but the circumstances of that possession are egregious. Following an argument with a former intimate partner which transpired hours earlier, the defendant chose to acquire a gun from an associate and fire that gun twice on a densely populated residential New York City street. Although the defendant claims to remember that he fired only "once" and only "in the air" (Deft. Sent. Sub. at 7), these claims are controverted by the video and forensic evidence. Even in the still image duplicated above, it is obvious that the defendant is not firing straight up into the air, but in the direction of the opposite side of the street, which is where Victim-1 was located.

That evidence is consistent with the obvious intent underlying the crime: to cause a former romantic partner and her relations to fear for their lives. The defendant made that clear when seconds after the shooting he both boasted about his crime and further threatened Victim-1, claiming in a text message that the next shooting would be through her apartment door. Moreover, the defendant acknowledged that others were present in Victim-1's home at the time, threatening them also by explaining that after his "next one / Everyone sits down."[6] Mercifully, he did not shoot through Victim-1's window or into her apartment, where four children, other adults, and Victim-1 were located at the time, or injure or kill another resident. The forensic evidence also proves the defendant fired twice; the shell casings were forensically determined to have been fired from the same gun, and the ShotSpotter system registered at least two gunshots.[7]

Discharging a firearm on a busy New York City street is dangerous enough on its own to merit a serious sentence. But the defendant's conscious decision to acquire a gun, fire it twice in an act of domestic violence intended to terrify a household where children were present, pass the gun to another person, then to continue to threaten members of the aforementioned household, is

---

[6] The defendant's submission claims, without support, that the instant prosecution was brought only after Victim-1 "declined to cooperate" with the District Attorney's Office. (Deft. Sent. Sub. at 7). This is not the Government's understanding of the history of this case. *First*, while the defendant was not arrested until December 2021, he was indicted in August 2021, weeks after his state arrest and release. *Second*, the Government's understanding is that the state case was dismissed in favor of federal prosecution, and was not dismissed until on or about February 24, 2022, well after the federal proceedings in this case were underway. *Third*, the defendant is well aware from both the nature of the underlying state proceedings as well as the discovery in this case, which included the state grand jury minutes containing Victim-1's testimony, that Victim-1 cooperated with the District Attorney's Office. It is also true that Victim-1 declined to be interviewed by Probation and claimed that she would prefer not to remain involved in the case. (PSR ¶ 12). This does nothing, in the Government's view, to diminish the seriousness of the offense conduct, or somehow erase the domestic violence aspects of the defendant's crime.

[7] The evidence discussed herein, including audio and video recordings, is available at the Court's request.

indisputably grave conduct. That the defendant continues to characterize it as behavior that was just an understandable release of frustration following an argument about money suggests a total failure to reckon with the seriousness and dangerousness of his conduct. A substantial sentence is warranted to address the defendant's conduct in discharging a gun on a city street period, but is all the more appropriate given the sum context of this violent act.

Moreover, the history and characteristics of the defendant, and the need to promote respect for the law, also strongly influence the Government's view of an appropriate sentence. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). Although it is true that a number of the defendant's convictions are more than a decade old, the Government is more troubled by the fact that the defendant's most serious convictions relate to the criminal conduct that occurred most recently to the commission of the instant offense. The defendant's prior drug convictions relate to serious conduct, but the assault and arson convictions are the more recent, and more disturbing to consider in light of the instant offense. Finally, the Government notes that the need to afford adequate deterrence to the defendant and others similarly situated, also recommends a sentence within the range suggested by the Government. *See* 18 U.S.C. §§ 3553(a)(2)(B)-(C). That those aforementioned offenses each resulted in prison sentences apparently did not dissuade the defendant from engaging in this offense. A sentence equal to or less than those previously imposed would likely fare no better, and may even serve as less a deterrent given the seriousness of the instant conduct. The goals of both specific and general deterrence are, in the Government's view, best met by a sentence which conveys that continued and more serious criminal conduct is not met by gradually decreasing penalties.

### IV.   Conclusion

The defendant's conduct in this case was serious, as is his criminal history. The defendant has earned a substantial sentence. For these reasons, and for all those set forth above, the Government respectfully submits that the Court should impose a term of incarceration within the Guidelines range of 84 to 105 months' imprisonment.

    Respectfully submitted,

    DAMIAN WILLIAMS
    United States Attorney

By: /s/_____
    Matthew Hellman
    Assistant United States Attorney
    (212) 637-2278

cc:   Defense Counsel (by ECF)